IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **RICKY REDDING, et. al.** | |
| **Plaintiffs,** | |
| v. | 1:05-cv-2899-WSD |
| **STANLEY TUGGLE, et. al.** | |
| **Defendants.** | |

**OPINION AND ORDER**

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R&R") [135] regarding Defendant's Motion for Summary Judgment [112], and Plaintiffs' Objection to Report and Recommendation of the United States Magistrate Judge [137].

**I.   BACKGROUND**

Plaintiffs in this action are seven black current or former employees of the Clayton County Sheriff's office. At the time the cause of action arose, all seven Plaintiffs were employed as either Correctional Officers ("COs") or Correctional Sergeants ("CO Sgts"). COs and CO Sgts are unsworn law-enforcement personnel, without arrest powers or the authority to serve warrants, whose primary duty is to process and supervise prison inmates. CO Sgts have supervisory

capacity over COs. COs and CO Sgts can be reassigned or rotated to different tasks within the Jail Division without loss of compensation or benefits.

Defendants in this action are former Clayton County Sheriff Stanley Tuggle ("Tuggle"), Chief Deputy Sheriff Shelby Foles ("Foles"), Jail Operations Major Michael Maddox ("Maddox"), Jail Operations Captain Angelo Daniel ("Daniel"), and Jail Operations Lieutenant Deanne Cash ("Cash"). Daniels is black; the remaining Defendants are white.

In 2003-2004, Tuggle unsuccessfully ran for reelection as Clayton County Sheriff. One of Tuggle's opponents in the primary race was Victor Hill ("Hill"). Hill, who is black, beat Tuggle in the primary and was elected Sheriff.

All Plaintiffs state that they supported Hill's candidacy. During Hill's campaign, Plaintiff Ricky Redding ("Redding") held a meet-and-greet at his home in support of Hill. Plaintiff Kathy L. King ("King") attended this meet-and-greet. Plaintiff Jonathan Stevens ("Stevens"), while on duty and in uniform, passed out literature supporting Hill. Stevens was orally counseled for this behavior, but was not otherwise reprimanded for it. Plaintiff Daniel Lawrence ("Lawrence") passed out pens in support of Hill. Plaintiffs Clide Moss ("Moss"), Grant Kidd ("Kidd"),

and Terry Lofton ("Lofton") received literature about Hill, and, allegedly, it was rumored in the Jail Division that they supported Hill.

During Tuggle's tenure as Sheriff, he revised the Clayton County Sheriff's Office Rules and Regulations to create a process through which COs could become Deputy Sheriffs. Tuggle created the position of Deputy Sheriff Trainee ("DST"). COs could, after six months of service with the Sheriff's Office, submit a written request to be considered for a DST position. Once this request was approved by a supervisor, the COs name was placed on an "eligibility roster" for three years. The Sheriff's Office held an annual Assessment Center process during which it considered candidates for DST positions from the eligibility roster. It is undisputed that Tuggle could choose anyone on the roster to fill an available DST position. DST positions opened only on occasionally.

Clayton County paid for DSTs to attend Georgia Mandate School to become state-certified and sworn law-enforcement officers. Upon successful completion of Mandate School, DSTs could be promoted to Deputy Sheriffs.

In 2004, after Tuggle had lost the primary to Hill but before the end of his elected term, he altered the process by which DST positions could be filled. It is undisputed that Tuggle changed the process because he planned to fill 15 DST

positions at once.  Tuggle created a "Special Assessment" process through which he could consider promoting any candidate to a DST position, regardless of whether they were on the eligibility roster.[1]  Tuggle asked Maddox to recommend candidates for the mass promotion he intended.  Maddox delegated this task to Daniel and Cash, who recommended a number of COs.

 Tuggle then required Maddox to ask all CO Sgts if they wanted to be considered.  Maddox delegated this task to Daniel.  It is undisputed that Daniel asked only some of the CO Sgts.  Plaintiffs allege that Daniel asked only white CO Sgts.

Tuggle, working from recommendations made by Maddox, Daniel, and Cash, as well as his personal impressions of the candidates, selected 15 DSTs.  Four of these DSTs were black, and one was Hispanic.  After making these selections, Tuggle learned that three of the selected DSTs–all white–were not qualified to attend Mandate School.  Tuggle selected three additional DSTs.  One was white, and the other two were black.  Out of a total of eighteen DST selections, seven of the new DSTs--six blacks, and one Hispanic–were non-white.  Ten of the

---

[1] It is undisputed that Tuggle's unilateral changes to the Office Rules and Regulations regarding DST hiring were within his authority.

eighteen DSTs, including five blacks and one Hispanic, eventually became Deputy Sheriffs.

On November 11, 2005, Plaintiffs filed the present action alleging that the Defendants, the Clayton County Sheriff's Office, and Clayton County, Georgia, violated their constitutional rights by failing to promote them based on race and retaliating against them for speech protected by the First Amendment. On January 4, 2007, Defendants filed a Motion for Summary Judgment. On July 11, 2007, Magistrate Judge Walker issued an R&R recommending that Defendants' motion be granted and Plaintiffs' claims dismissed.

Plaintiffs have filed a limited objection to the R&R. Plaintiffs contend that Magistrate Judge Walker erred by dismissing Kidd and King's Title VII and 42 U.S.C. § 1981 race discrimination claims. Plaintiffs specifically object to the R&R's findings that Defendants established a race-neutral reason for failing to promote Kidd and King, and that Kidd and King failed to show that Defendants' race-neutral reason was pretextual.

## II.   STANDARD OF REVIEW

In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a careful de novo review of the portions of the Magistrate Judge's Report and Recommendation to which Plaintiffs have objected. The Court has reviewed the remainder of the Magistrate Judge's Report and Recommendation for plain error. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## III.   DISCUSSION

The Court, after carefully reviewing the R&R, finds no clear error in the unobjected to portions of the R&R.[2]  Plaintiffs object only to the R&R's findings regarding Kidd and King's claims of race discrimination under Title VII and 42 U.S.C. § 1981. The Court considers these claims *de novo*.

---

[2] The unobjected to portions of the R&R find: (1) that Plaintiffs' First Amendment claims should be dismissed; (2) that Redding, Stevens, Lofton, Moss, and Lawrence's race discrimination claims should be dismissed; (3) that Defendants are entitled to qualified immunity; and (4) that Defendants Foles, Maddox, Daniel, and Cash are not individually liable under § 1981. The Court concludes that there is no plain error in these findings.

Plaintiffs claim that Defendants discriminated against Kidd and King because of their race by failing to promote them to the DST position.[3] To state a *prima facie* case of race discrimination, Plaintiffs must offer either direct evidence of racial animus or substantial circumstantial evidence of discriminatory intent. See Schoenfield v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).

A.   Direct Evidence

Direct evidence of discrimination is evidence that "if believed, proves the existence of [a] fact in issue without inference or presumption." Burrell v. Bd. of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997) (citations and quotation omitted). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate . . . ." Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989). "If an alleged statement at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence." Schoenfield, 168 F.3d at 1266. "[R]emarks unrelated to the decision-making process itself are not direct evidence of discrimination." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332 (11th Cir. 1998).

---

[3] Plaintiffs object to the dismissal of Title VII claims and Fourteenth Amendment Equal Protection claims under 42 U.S.C. §§ 1981. Both claims apply the same legal standard. Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002).

In the present case, Plaintiffs offer as direct evidence the undisputed fact that Defendants Tuggle, Foles, and Maddox have each at some point in the past used the word "nigger". There is no evidence in the record concerning when, how, or against whom this word was used. There is no evidence that the word was ever used directly or indirectly in connection with any of the Plaintiffs, specifically Kidd or King, in connection with the decision-making process at issue, or even in an employment context. It is undisputed that Tuggle, Foles, and Maddox never used the word while employed by Clayton County.[4]

Taking as true the claim that Tuggle, Foles, and Maddox have each used the word "nigger" at least once in the past, that fact does not prove the existence of discriminatory animus in the DST selection process. To find discriminatory animus from Plaintiffs' allegations, the Court would have to infer that Tuggle, Foles, and Maddox all used the word to express a general racist hostility against blacks, that they have maintained this hostility over the decades since they last uttered the word, and that (despite the fact that six black employees were promoted to DST) the hostility influenced their professional judgment. The very

---

[4] Defendants claim that Tuggles, Foles, and Maddox testified that they last used the word "nigger" "decades before the events at issue." Plaintiffs do not dispute this contention.

fact that the Court must pile inference upon inference to make Plaintiffs' allegation relevant to their present claims shows that the Defendants' use of the word "nigger" years ago in unspecified contexts is not direct evidence of discriminatory animus.  See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-28 (11th Cir. 2002) (holding that a racially derogatory remark made by a white co-worker against a black employee two years prior to an allegedly discriminatory employment action was not direct evidence of discrimination). Plaintiffs provide no evidence that the word "nigger" was used in reference to Kidd or King, in relation to the decisional process at issue in this case, or even in an employment context.  Plaintiffs' case is not one of direct evidence, and must be proven, if at all, circumstantially.

>    B.    Circumstantial Evidence

To prove racial discrimination through circumstantial evidence, a plaintiff must show:

> (1) she is a member of a protected class, (2) she was qualified for a position and applied for it, (3) she was not considered for the position despite her qualifications, and (4) equally or less qualified individuals outside of her protected class were considered or hired for the position.

Underwood v. Perry County Com'n, 431 F.3d 788, 794 (11th Cir. 2005).

If the plaintiff makes a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse action." Suncoast Beverage, 295 F.3d at 1228.  The plaintiff must then come forward with "specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination."  Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 949 (11th Cir. 1991).

    1.    *Prima Facie Case*

Although the R&R found that Plaintiffs made a *prima facie* case, the Court disagrees.  There is no dispute that Kidd and King are black, that they were qualified for the DST position under Tuggle's Special Assessment program, and that they were not promoted to the DST position.  Plaintiffs have not shown, however, that a non-black applicant filled the vacancies for which they applied.  The Eleventh Circuit's decision in Underwood v. Perry County Com'n, 431 F.3d 788, 794 (11th Cir. 2005) is persuasive, if not controlling, on this issue.

In Underwood, the court held that a plaintiff had failed to make a prima facie case of sex discrimination[5] when she failed to demonstrate that a male was hired to fill the position for which she had applied.  Underwood sought employment as a

---

[5] Sex discrimination is evaluated under the same legal standard as race discrimination.  Underwood, 431 F.3d at 793-94.

truck driver for Perry County, Alabama. Id. at 789-90. The county commission declined to hire her, but hired three males and two females for truck driving positions during the same time period. Id. at 792.

The court held, "If the record showed that the Commission . . . hired only males for the positions which Underwood applied, then Underwood would satisfy her burden of proving that a person outside of her protected class was hired. It is not necessary that Underwood name the individual hired . . . it is necessary that Underwood present evidence that the favored applicant was male." Id. at 794. Because three males and two females were hired at the same time Underwood applied, the court concluded that "the only inference about gender and the hiring of a truck driver is that both men and women were hired. When Underwood failed to identify a position for which she applied and the gender of the person who filled that position, she failed to carry her burden . . . ." Id. at 795.

The same situation exists here. Kidd and King allege that they were discriminated against because they are black and were denied promotion in favor of white candidates. It is undisputed, however, that seven of the eighteen DST positions were filled by non-white candidates. Six of the non-white new DSTs were black. Plaintiffs have presented no evidence that the DST positions to which

-11-

they were denied promotion were filled by white candidates, and have thus failed to satisfy an element of their *prima facie* case.[6]

### 2.  *Pretext*

Even if Plaintiffs had stated a *prima facie* case, they have not presented sufficient evidence to overcome Defendants' proffered race-neutral reason. To establish pretext, Plaintiffs must "meet the reason proffered head on and rebut it." Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007).

Defendants claim that Tuggle changed the DST hiring policy and hired a large number of DSTs all at once in response to his perception that a new raft of county commissioners might cut funding for the DST position.[7] Plaintiffs do not present any evidence to show that Tuggle changed the DST promotion policy for the purpose of filling the positions with whites–to the contrary, the record undermines the pretext argument. The record shows that the Special Assessment program created greater opportunities for all employees to become DSTs, regardless of race. For example, had Tuggle not implemented the Special

---

[6] Rather, this evidence suggests that Tuggle filled DST positions though the Special Assessment program without regard for race.

[7] It appears that Tuggle may have promoted so many DSTs to limit Hill's opportunities to promote.

Assessment program, Stevens, Kidd, Moss, and King would not have been eligible to apply for a DST position.  The unbiased manner in which the Special Assessment program increased DST opportunities bears out its fundamentally race-neutral character: seven of the eighteeen newly promoted DSTs were non-white, and six of those seven were black.  Two of the six black candidates promoted to DST would not have been eligible under the old policy, but were promoted under the Special Assessment program.  See Brown, 939 F.2d at 952 (11th Cir. 1991) (a practice that affects all races in the same manner is not evidence of discriminatory intent).

     Plaintiffs also fail to provide evidence that Tuggle selected the new DSTs according to any race-based criteria.  Defendants argue that Tuggle selected the candidates that he thought best fit for the Deputy Sheriff role, based on his own knowledge and recommendations of his command staff.  Plaintiffs present some evidence to suggest that the Special Assessment program allowed Tuggle to make decisions based on favoritism, but this evidence does not show that the program was a pretext or cover for engaging in discriminatory promotion practices.  As the R&R notes, "Plaintiffs' argument simply disagrees with Defendants' decisions and the process used to arrive at those decisions."  (R&R, at 45.)

Plaintiffs raise two arguments that the Special Assessment process was discriminatory: (1) because Tuggle did not deal with CO or CO Sgts on a day-to-day basis, it would be "impossible" for him to select DST candidates on the grounds he claims; and (2) the Court should infer that Tuggle's reasons are pretextual because only white CO Sgts were asked if they wanted the DST position.  Tuggle's lack of day-to-day experience with the staff of the Jail Division suggests, if anything, only that his selections may have been based on favoritism or on general impressions that may not have been factually inaccurate.  Tuggle's lack of experience does not suggest that Tuggle acted with discriminatory intent.  Tuggle's personal judgments about who was "right for the job" may have been mistaken, but there is no evidence that they were discriminatory.[8]  Smith v. Horner, 839 F.2d 1530, 1538-39 (11th Cir. 1988).  Tuggle's proffered reason is bolstered

---

[8] There is no evidence that Tuggle used race as a criteria for promotion. Plaintiffs argue that Kidd and King were more qualified that the white candidates eventually hired.  Plaintiffs do not offer any evidence of superior qualification other than their own conclusory allegations.  Plaintiffs' argue that their greater seniority provides greater qualification for the DST position.  It is undisputed that the responsibilities of a DST and Deputy Sheriff are substantially different from those of a CO or CO Sgt.  Plaintiffs do not offer any evidence to show how seniority as a CO or CO Sgt translates to superior qualification for the substantially different role of Deputy Sheriff.

by the number of black candidates actually selected for the DST position under his new system.

Plaintiffs' assertion that Daniel did not ask any black CO Sgts if they wanted to be considered for the DST position also does not establish pretext. Kidd's deposition testimony does not establish that all black CO Sgts but no white CO Sgts were asked if they wanted to become DSTs. Kidd's testimony, at most, establishes that some white CO Sgts were asked if they wanted to become DSTs, and some black CO Sgts were not asked. The "all" and "none" distinction claimed by Plaintiffs as evidence of pretext is simply not sufficiently supported by the record to overcome Defendants' motion for summary judgment.[9] Plaintiffs' pretext argument, which relies wholly on this distinction, is flawed.

That fact is that six black COs were considered and selected for DST positions. It is also undisputed that Daniel himself is black. These facts strongly

---

[9] The R&R notes that Kidd's testimony was not only inconclusive, but was based on inadmissible hearsay. Such evidence cannot defeat a motion for summary judgment. Macuba v. Deoboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999). Even if the hearsay portion of Kidd's testimony was capable of being "reduced to admissible evidence at trial," id., it still does not support the sweeping assertion for which Plaintiffs' offer it. Without a factual basis for the claim that all white and no black CO Sgts were asked if they wanted to become DSTs, Plaintiffs' claim of pretext must fail.

suggest that any lack of consideration of black CO Sgts was not the product of racial discrimination. No genuine issue of fact exists on the issue of pretext.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Objection to Report and Recommendation of the United States Magistrate Judge [137] are **OVERRULED**. The Court **ADOPTS** the Magistrate Judge's Report and Recommendation ("R&R") [135], as modified by this Order. Defendants' Motion for Summary Judgment [112] is **GRANTED**.

The Clerk is directed to **CLOSE** this case.

**SO ORDERED** this 20th day of August, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE